```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SELWYN WALKER,                                             :
                                                           :
                              Petitioner,                  :
                                                           :         **MEMORANDUM AND ORDER**
              -against-                                    :
                                                           :         14-CV-00141 (DLI)
ATTORNEY GENERAL OF THE STATE                              :
OF NEW YORK,                                               :
                              Respondent.                  :
                                                           :
-----------------------------------------------------------x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

On January 8, 2014, Selwyn Walker ("Petitioner") petitioned this Court for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, Queens County for one count of criminal sexual act in the first degree and one count of unlawful imprisonment in the second degree. (Pet. for Habeas Corpus ("Pet."), Dkt. Entry No. 1.)

On February 18, 2014, this Court ordered Petitioner to show cause why it should not dismiss the Petition as time barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. On March 4, 2014, Petitioner filed his response asserting that the doctrine of equitable tolling saved the Petition. (*See* Petitioner's Response to Order to Show Cause ("Pet.'s Resp."), Dkt. Entry No. 4.) The Attorney General for the State of New York ("Respondent") opposed, maintaining that the action was time barred as of March 25, 2014. (*See* Respondent's Opp'n to Order to Show Cause ("Resp.'s Opp'n"), Dkt. Entry No. 8.)

Without leave from this Court, on March 5, 2015, Petitioner, acting *pro se*, filed a "supplemental" response to the Order to Show Cause, which asserted new arguments and a claim of actual innocence. (*See* Petitioner's Supplemental Response to Order to Show Cause ("Pet.'s

1

Supp. Resp."), Dkt. Entry No. 13.) On November 4, 2015, this Court issued a Summary Order holding that it would consider Petitioner's arguments in his supplemental response.[1] The Court directed Respondent to respond to Petitioner's supplemental response, and Respondent submitted its response on January 11, 2016. (*See* Resp.'s Supplemental Opp'n to Order to Show Cause ("Resp.'s Supp. Opp'n."), Dkt. Entry No. 24.)

On December 5, 2016, Petitioner's new counsel filed a motion seeking leave to file an additional memorandum of law addressing Petitioner's actual innocence claim. (*See* Dkt. Entry No. 34.) The Court granted Petitioner's request, and Petitioner filed his memorandum on March 3, 2017. (*See* Pet.'s Mem. in Supp. of Actual Innocence Claim ("Pet.'s Mem."), Dkt. Entry No. 36.) On March 17, 2017, Respondent filed its opposition, asserting that Petitioner's actual innocence claim was neither credible nor compelling. (*See* Resp.'s Mem. in Opp'n to Pet.'s Actual Innocence Claim ("Resp.' Mem."), Dkt. Entry No. 39.)

For the reasons set forth below, the Petition is dismissed as untimely.

## **BACKGROUND**

On March 13, 2005, during the late evening hours, Petitioner lured his former girlfriend (the "victim") to his father's house in Queens County, New York. (Resp.'s Opp'n at 2.) When she arrived, Petitioner pushed the victim into the basement of the house and threatened her with a knife. (*Id.*) At knifepoint, Petitioner made the victim undress and forced her to perform fellatio. (*Id.*) Following a jury trial, Petitioner was convicted of Criminal Sexual Act in the First Degree under New York Penal Law § 130.50[1] and Unlawful Imprisonment in the Second Degree pursuant to New York Penal Law § 155.30[8]. (*Id.*) On April 25, 2006, Petitioner was sentenced

---

[1] The Court assumes the parties' familiarity with the Order and provides only a brief summary of the procedural history of this case, as it relates to this decision.

to seven years of imprisonment on the criminal sexual act count to run concurrently with one year of imprisonment on the unlawful imprisonment count. (Pet. at 1.)

Petitioner appealed his conviction. (*Id.* at 2.) On March 4, 2008, the Appellate Division, Second Department (the "Appellate Division") affirmed the judgment of the trial court, finding that, contrary to Petitioner's contention, he was not deprived of the effective assistance of counsel, since the record as a whole demonstrated that he received meaningful representation. *People v. Walker,* 49 A.D.3d 569 (2d Dept. 2008). On May 19, 2008, the New York Court of Appeals ("Court of Appeals") denied Petitioner's application for leave to appeal. *People v. Walker*, 10 N.Y. 3d 872 (2008). On July 16, 2014, the Appellate Division denied Petitioner's application for a writ of error coram nobis, finding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel. *People v. Walker,* 119 A.D.3d 821 (2d Dept. 2014). On November 20, 2014, the Court of Appeals denied Petitioner's application for leave to appeal the Appellate Division's decision, *People v. Walker*, 24 N.Y.3d 1047 (2014), and on January 13, 2015, denied reconsideration of that ruling. *People v. Walker*, 24 N.Y.3d 1123 (2015).

## DISCUSSION

The AEDPA establishes a one-year statute of limitations for filing a habeas corpus petition. 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(A), the one-year limitations period runs from the "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[2] A conviction becomes final when the 90-day period for seeking a writ of certiorari expires. *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003). The AEDPA also contains a statutory tolling provision, which states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the

---

[2] Petitioner does not state any facts from which the Court can conclude that subsections (B)-(D) of § 2244(d)(1) apply.

3

pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *Acosta v. Artuz*, 221 F.3d 117, 119 (2d Cir. 2000).

Aside from the statutory tolling provision, the AEDPA's one-year limitations period also is subject to the doctrine of equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010). A court may equitably toll the limitations period where the petitioner demonstrates that "he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. A "petitioner seeking equitable tolling must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" *Jenkins*, 630 F.3d at 303 (internal citation omitted).

Compelling claims for actual innocence also toll AEDPA's limitations period. *Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012). *See also United States v. Clark*, 571 F. App'x 67, 68 (2d Cir. 2014) ("credible and compelling claims of actual innocence may be considered even through an otherwise untimely petition") (citing *McQuiggin v. Perkins,* __ U.S. __, 133 S.Ct. 1924, 1928 (2013).

## A. Equitable Tolling

Petitioner concedes that the Petition is untimely under the AEDPA's statute of limitations, which required him to file the Petition within one year after his conviction became final on August 18, 2008. (*See* Pet.'s Resp. at 5-6; Pet.'s Mem. at 4; Resp.'s Opp'n at 7.) Nonetheless, Petitioner argues that the Court should equitably toll the limitations period until January 2011 because the various attorneys he hired did not initiate any post-conviction proceedings during that time and

4

retained his case file.  (Pet.'s Resp. at 2-6.)  Petitioner contends that, in October 2008, he hired a law firm to "pursue vacatur of his conviction" and that this firm returned his case file in August 2010 without initiating any proceedings.  (Pet.'s Resp. at 2-3; 5-6.)  Subsequently, in October 2010, Petitioner hired another attorney who "was reluctant to pursue petitioner's" case and returned his file in January 2011.  (*Id.* at 3.)  Petitioner asserts that the inaction of these attorneys is sufficient to equitably toll the limitations period until January 2011.  The Court disagrees.

In order to warrant equitable tolling, Petitioner must "show that he acted with reasonable diligence[.]"  *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003).  A court should ask if "the petitioner act[ed] as diligently as reasonably could have been expected *under the circumstances*[.]"  *Id.* (emphasis in original.)  It is the law in the Second Circuit that, "the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition."  *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004); s*ee also Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 33 (2d Cir. 2015).

Here, Petitioner failed to demonstrate any degree of diligence in urging the various attorneys he hired to file his habeas petition or return his case file.  There is no evidence that Petitioner made any effort to contact his attorneys concerning the status of his petition, faced an impediment in contacting them, or took steps to obtain his case file.  Instead, Petitioner waited to file his petition until well after the attorneys voluntarily decided to send Petitioner his legal materials, which does not demonstrate that he acted with reasonable diligence.[3]  *See Menefee*, 391 F.3d at 175 (noting "it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se*"); *Qadar v. United States*, 2014

---

[3] Since the Court finds that equitable tolling is not warranted for more than one year, it need not reach Petitioner's argument that the doctrine applies from 2011 to February 2013 because he lost his legal documents.  *See Harper v. Ercole,* 648 F.3d 132, 134 (2d Cir.2011) (petitioner "is required to show reasonable diligence in pursuing his claim throughout the period he seeks to have tolled").

WL 3921360, at *9 (E.D.N.Y. Aug. 11, 2014) (noting "it would be nearly impossible to find that [petitioner] acted with reasonable diligence despite seemingly failing to make diligent inquiry of his counsel as to when his § 2255 petition had been or would be filed").

**B. Petitioner's Actual Innocence Claim**

In his March 5, 2015 *pro se* submission, Petitioner asserts that the statute of limitations should not foreclose the Petition because he is innocent of the crimes for which he was convicted. (*See* Pet.'s Supp. Resp.) Petitioner argues that proposed testimony from various individuals will contradict the victim's testimony at trial and prove his innocence. (*Id.* at 26-39.) On March 3, 2017 Petitioner, now represented by counsel, supplemented his actual innocence arguments. (Pet.'s Mem.) In that submission, Petitioner supports his actual innocence claim with: (1) "unaltered phone records," which show that "it was a factual impossibility for Petitioner to have carried on a thirteen (13) minute telephone conversation while committing the crime as alleged;" and (2) the federal pleading transcript of Evans Nacier ("Nacier"), a government witness at trial, which undermines his credibility and would have "shifted the jury's decision on the sufficiency" of his oral testimony. (*Id.* at 2, 5.) While a showing of "actual innocence" may open a "gateway" through which a time barred habeas petition may pass, that is not the case here. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).

The standard to show an actual innocence claim "is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted). An actual innocence claim "must be both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541. "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). A claim

6

is "compelling" where the petitioner demonstrates that, "'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538). At a minimum, a petitioner must "introduce credible new evidence that thoroughly undermines the evidence supporting the jury's verdict." *Id.* at 543. If a court finds that petitioner's actual innocence claim is credible and compelling, AEDPA's limitations period is tolled. *Rivas*, 687 F.3d at 548.

Petitioner's March 5, 2015, *pro se* submission contains no evidence that supports a credible and compelling actual innocence claim. First, Petitioner's challenges to the sufficiency of the trial evidence are insufficient to support his claim because "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Alke v. Artus*, 2016 WL 4186965, at *4 (E.D.N.Y. Aug. 8, 2016).

Next, Petitioner asserts that the new testimony of various individuals supports his claim because it contradicts the victim's testimony regarding events that occurred prior to the commission of the crime. (Pet.'s Supp. Resp. at 25-29.) In his submission, Petitioner describes the testimony of these individuals and contends that their testimony "will prove that [the victim's] testimony at the Grand Jury and at trial that [he] lived with [her] . . . for two years prior to [the date of the incident] was false." (Pet.'s Supp. Resp. at 25.) Even if Petitioner's self-serving assertions concerning what these individuals would say during their testimonies were true, it is not compelling evidence. Here, the crimes for which Petitioner was convicted occurred during the late evening hours of March 13, 2005, but the alleged testimony of these individuals mostly relates to collateral matters before that date and time and does not affect the victim's testimony of what occurred when Petitioner committed the crime. Since the testimony Petitioner describes deals only

tangentially with the commission of the crime, it would not make it "more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 133 S. Ct. at 1933 (internal citation and quotation marks omitted). Accordingly, it is not compelling evidence.

Moreover, even if the purported testimony of these individuals substantially related to the facts surrounding Petitioner's commission of the crime, this "evidence, consisting entirely of hearsay statements, is not credible." *Brown v. United States*, 2015 WL 1790234, at *8 (E.D.N.Y. Apr. 20, 2015). Here, Petitioner's submission does not contain affidavits from any of the individuals detailing their testimony and, therefore, the Court has no way of evaluating the testimony. *See Granados v. Singas*, 2016 WL 6205800, at *6 (E.D.N.Y. Oct. 24, 2016) (finding affidavit "based entirely on hearsay, which makes it 'particularly suspect' under the circumstances" neither credible nor compelling evidence). Instead, Petitioner simply describes what each of these individuals would say during their testimony and how it supports his claim. Petitioner's description of each individual's testimony is unreliable hearsay that lacks any indicia of reliability and, without more, is insufficient to support his claim.[4] *See Qadar v. United States*, 2014 WL 3921360, at *7 (E.D.N.Y. Aug. 11, 2014) ("The fact that petitioner's 'new evidence' consists entirely of hearsay statements may not, alone, be determinative, but it is a factor that weighs against the reliability of the evidence.").

In his March 3, 2017 supplemental submission, Petitioner argues that, at trial, the Assistant District Attorney used "doctored, and/or inaccurate [phone] records to convince the jury that [he] was guilty." (Pet.'s Supp. Resp. at 7.) According to Petitioner, the unaltered phone records he now presents are "clear and compelling" proof of his innocence because they demonstrate that he

---

[4] The Record indicates that Petitioner included signed and notarized witness statements with his 2014 motion to vacate the judgment in state court. However, the Court cannot ascertain if Petitioner is relying on those witness statements in his submission before this Court.

8

was on the phone when the crime was committed. (*Id.* at 5, 8.) The Court disagrees and finds that Petitioner's phone records are not compelling evidence.

Here, Petitioner asserts that based "on the circumstances alleged to have occurred, the sexual assault would have to have taken place between 10:49 p.m. and 11:29 p.m." on March 13, 2005. (*Id.* at 9.) Both sets of phone records show that Petitioner's phone was used from 10:59 p.m. to 11:17 p.m. and again at 11:29 p.m. (*Id.* at Ex. A, B.) Petitioner concedes that the phone records reflect a thirteen-minute period when Petitioner's phone was not in use. (*Id.* at 9.) However, Petitioner and Respondent disagree as to what may have occurred during those thirteen minutes. Petitioner contends that it is "virtually impossible for the jury to believe" that he committed the sexual assault in those thirteen minutes. (*Id.*) Meanwhile, Respondent asserts that "the thirteen-minute gap . . . provided plenty of time for defendant to have sexually assaulted the victim in the manner she described." (Resp.'s Supp. Opp'n. at 18.) However, the Court does not find the circumstances as fantastic as Petitioner describes. While the phone records before the jury did not display certain calls that occurred after 11:29 p.m., which Petitioner contends "gave the jury an incomplete picture of events on the night of the alleged crime," the records did include the 11:17 p.m. and 11:29 p.m. calls. (Pet.'s Mem. at 6.) Based on this fact, the Court is not convinced "that more likely than not any reasonable juror would have reasonable doubt" that the crime could not have occurred in thirteen minutes. *Diaz v. Bellnier,* 974 F. Supp.2d 136, 143 (E.D.N.Y. 2013) (citing *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).

Petitioner's actual innocence claim contains no arguments that are sufficient to establish a credible claim. "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Rivas,* 687 F.3d at 541. While Petitioner repeatedly

challenges the trial evidence or contends that he was convicted on insufficient evidence, the "actual-innocence standard is by no means equivalent to the standard … which governs claims of insufficient evidence." *See House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Instead, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); *Chettana v. Racette*, 2016 WL 447716, at *11 (N.D.N.Y. Feb. 4, 2016); *Wallace v. Superintendent of Clinton Corr. Facility*, 2014 WL 2854631, at *8 (S.D.N.Y. June 20, 2014).

Furthermore, the majority of Petitioner's "new evidence" is not new, but was either used in prior motions or was available at the time of trial. *See Brown v. United States*, 2015 WL 1790234, at *7 (E.D.N.Y. Apr. 20, 2015). Nacier's federal plea minutes from 1996 were available to Petitioner's trial counsel, had he decided to order them. (Resp.' Mem. at 8.) Instead, trial counsel cross-examined Nacier extensively on his conviction and the circumstances under which he pled guilty. (*Id.*)

Similarly, Petitioner's "newly discovered" statements from several individuals are hearsay and are not credible, as already discussed above. *See Qadar v. United States*, 2014 WL 3921360, at *7 (E.D.N.Y. Aug. 11, 2014). Nonetheless, even if any evidence were new, it is not compelling. Petitioner has not explained how any of it would make it "more likely than not [that] any reasonable juror would have reasonable doubt," *Rivas,* 687 F.3d at 542-3, after the Appellate Division found that the evidence was "legally sufficient to establish [his] guilt … beyond a reasonable doubt." *Walker*, 49 A.D.3d at 569; *see also Spurgeon v. Lee*, 2015 WL 4610021, at *8 (E.D.N.Y. July 31, 2015). Thus, Petitioner's actual innocence claim is not sufficiently credible and compelling to toll the AEDPA statute of limitations, and the Petition is time-barred.

## **CONCLUSION**

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed as untimely. Petitioner is denied a certificate of appealability as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2017

/s/
DORA L. IRIZARRY
Chief Judge